## H. M. Grove, Plff. in Err., *v.* George McAlevy et al.

In an action of trespass for entering premises of plaintiff and destroying

herbage, etc., therein growing, *Held*, that a division fence established by owners of adjoining lands, and acquiesced in by them and their successors for twenty-one years, is conclusive upon them and those holding under them.

*Held, further,* that plaintiff could not recover unless he was in actual possession of the premises at the time of the alleged trespass.

(Argued February 3, 1887.   Decided February 14, 1887.)

January Term, 1887, No. 225, E. D., before MERCUR, Ch. J., GORDON, PAXSON, STERRETT, GREEN, and CLARK, JJ.   Error to the Common Pleas of Crawford County to review a judgment on a verdict for defendants in an action of trespass on lands. Affirmed.

The facts sufficiently appear from the charge of the court to the jury given below.

The plaintiff presented the following points:

1. If the jury find from the evidence that the boundary line between the lands of the plaintiff and defendants was fixed and established in the year 1851 by William Williams and John B. Hawthorn, and the division fence between said parties' lands was built upon the line so fixed and established, and was acquiesced in by the said Williams and Hawthorne, and their respective successors in title, for upwards of twenty-one years, the said line cannot now be altered, and their verdict should be for the plaintiff.

2. If the jury believe that at the time of the purchase by Hawthorne from Williams the vendor and vendee went to the ground and marked upon it the north line of the land bought by Hawthorn from Williams, the line so marked fixes the northern limit of the purchase by Hawthorn and all claiming under him.

3. If the jury should find that at the time Hawthorn purchased by articles of agreement from William Williams, or shortly thereafter, and more than twenty-one years before the committing of the trespass or entry by the defendants, they, Williams and Hawthorn, consented to a boundary line between them, and the same had been acquiesced in for upwards of twenty-one years, their verdict should be for the plaintiff.

4. If when Hawthorne bought from Williams, Williams was the owner of other land south of the piece he was conveying to Hawthorn, and he conveyed by courses and distances, and in pursuance thereof the parties ran the lines, and agreed upon

the line between them and erected a fence thereon, agreeing that it should be the division fence or line between them, such acts on the part of Williams and Hawthorn were conclusive upon them, and those holding under them, and the verdict should be for the plaintiff.

The defendants presented no points.

The court, CHURCH, P. J., charged the jury as follows:

This is an action of trespass brought by H. M. Grove, against George and Thomas McAlevy, to recover damages for an alleged entering upon the freehold of the plaintiff, and the destruction of certain herbage, timber, fruit trees and shrubs growing thereon.

[It seems that the defendants were in possession of these premises; that is to say, they had the actual foot possession of the premises at the time of the trespass alleged to have been committed.]

An action of trespass sounds, it being a possessory action, rather of an action to recover the foot possession. A party plaintiff could not recover anything, unless he was in actual possession of the premises at the time of the trespass alleged to be committed.

In this case the plaintiff was in possession of his strawberry patch and some other of his property. The defendants have pleaded that it is their own tenement, their own free tenement, that they entered upon. That plea, having been pleaded, raises the issue of title upon the strip of property upon which a trespass has been committed. It raises the question of whether the strip of land 5 or 6 rods wide and some rods long resides in and belongs to the plaintiff or the defendants; and that is the first question you have to determine, because if you determine it against the plaintiff, you have nothing further to say, and no damage is committed. If you find that the property is the legal, lawful property of the plaintiff, he has the title thereto, then you determine the question of damages; how much the plaintiff has been damnified. But you will first direct you attention to the question as to whether the property belongs to the plaintiff or defendants.

[The defendants allege that this property once belonged to Mr. Shubal Williams, who deeded it prior to 1860.] He owned both pieces of property, on the north and on the south, the plain-

tiff, Grove, on the north, and the defendants on the south; and he sold the piece on the south to John B. Hawthorn, and thence by sundry conveyances the title became vested in A. D. Smith, about 1873, and from Smith to McAlevy. He owned the property on the north that Grove bought.

And they allege that, no matter where the real line may be, Shubal Williams, owning the whole property, and he selling a number of acres to Hawthorn, and he to Smith, under whom McAlevy claims, that he surveyed off a certain piece to Hawthorn, and that being the case that is the line that must govern these pieces.

[I cannot do better, although somewhat out of order, to state succinctly the claim of the defendants, than by reading the defendants' points of law.]

Defendants' first point read and affirmed.

Second point read and affirmed.

Third point read and affirmed.

Fourth point read and affirmed.

[So you will perceive that from the defendants' standpoint their statement of law is correct] provided you believe the evidence as to establishing and marking out the lines upon the ground and building fences.

[But all these points are hypothetically stated, that is, if you believe so and so, and that it is the line claimed to by the defendants. This is all true.]

[To arrive at the facts in this case you have to determine from the evidence whether the line claimed to by Grove is the line run by Williams and Hawthorn. If it is they are entitled to recover.]

That was argued very fully on Saturday, and I have nothing to say upon the probabilities or improbabilities of witnesses being correct.

[It is alleged on the part of the plaintiff that the sons of Shubal Williams are talking about a different fence, and that the fence that Hawthorn and Williams run is not the one the plaintiff claims to now. It is an old fence on which the defendants, Smith or McAlevy, put their fence afterwards. There is some evidence, it may be slight, to be sure, that the fence put on the ground 4 or 5 rods north is upon the remains or ruins of the old fence. I say slight, but it is sufficient for you to consider, and as such you will consider it.]

Some other testimony, which is altogether for you, is the testimony of Mr. Lippincott, who appeared on the ground two or three weeks ago, and surveyed this ground. [He took the deed from Williams to Hawthorn; according to the description in that deed he began and made a survey. You heard him describe what he did, and what he found in pursuance of that survey. When he found the courses and distances in this deed, he found marked corners and lines just exactly where these deeds put them.] The deeds were made in 1860, and the agreement in 1851. The witness says the place where the defendants claim to now, namely: on the north, comes, so far as courses and distances are concerned, up to these deeds; and that on the line claimed to by the plaintiff, he found no mark or any line there at all. He found a fence partly rail and partly brush.

It is for you to determine under the conflicting evidence, and under all the evidence, whether the line Hawthorn bought to, and subsequently Smith, and subsequently McAlevy, these defendants, bought, was the line that Mr. Lippincott surveyed, was the line they bought to, and are entitled to maintain and hold in this suit. And as a part of that consideration, you will consider whether the fence put there by McAlevy some time ago, last August or October, is, as the defendants claim, upon the line marked by Williams and Hawthorn. I say nothing about the weight of the evidence; you will consider all the evidence in the case bearing upon that.

It is alleged that these witnesses upon the part of the plaintiff, however truthful they may be about Williams and Hawthorn putting and designating a line, are mistaken about the fence of the plaintiff's being upon that line. But they say that the fence put there by the defendants was put there on the ruins of the very fence Williams and Hawthorn laid out. The discoveries of Mr. Lippincott, when he surveyed the grounds by courses and distances of that deed, the marks on the ground, the corners and lines, are evidence—you have a right to consider as to whether the fence upon the north is the true line fence, or whether that upon the south is the true line fence.

If you find that the title is in the defendants, then they have committed no trespass, they have done that which they had a right to do, put their fence there, cut down timber and plow up the strawberry patch.

If you find the property is the property of the plaintiff, then

you determine the question of damages; and there is a variety of opinions as to the value of his strawberry patch. It consisted of an old bed of plants, which of themselves were not worth very much, and the value consisted mostly in the runners, susceptible of being transplanted. One witness puts the damages at $100 for that and at $200 for the next year's crop. We say to you that the plaintiff cannot recover for the next year's crop.

If you find for the plaintiff, you find what that piece of strawberry patch was worth, not what it was worth to the plaintiff, but what it was worth, lying there in the market. Then there was some wood and some rails taken away, variously estimated at from $15 to $18.

The question of damages is altogether for you. We simply state to you that when one of these witnesses calls damages for next year's crop, it is not an element to be considered by you. It is just what those strawberry plants were worth, the same as if they were so many oak, pine, or hemlock trees on the ground, provided you find for the plaintiff at all.

If you find for the defendants you have nothing to say as to the amount of damages. If you find for the plaintiff under the evidence, and under the rules we have given you, you find what the plaintiff has reasonably suffered.

The jury returned a verdict for defendants.

The assignments of error specified the portions of the charge inclosed in brackets; the action of the court in not answering all the plaintiff's points affirmatively without qualification, and in not affirming without qualification plaintiff's points as plaintiff's points; and the whole charge of the court, as being erroneous and misleading, and tending to prejudice the cause of plaintiff in the minds of the jury.

*Haskins & McClintock* and *Thomas Roddy,* for plaintiff in error.—The charge of the court was prejudicial.

In the second paragraph of the charge the court says: "It seems the defendants were in possession," etc.; when in fact the plaintiff was in possession as is admitted by all parties.

The court also says in the charge: "It is alleged on the part of the plaintiff that the sons of Shubal Williams are talking about a different fence," etc. There was no such allegation or contention by plaintiff, but by the defendants.

Again, the court says: "I cannot do better . . . to state succinctly the claim of the defendants, than by reading the defendants' points of law." The court then immediately follows this by reading and affirming plaintiff's points and then says:

"So you will perceive that from defendants' standpoint their statement of law is correct."

The defendants presented no points.

*W. R. Bole* and *J. W. Smith*, for defendants in error.—It is true the stenographer's report of the charge makes His Honor call the plaintiff's points, defendants' points. That is as likely to be the stenographer's mistake as the court's. It is probable if such a *lapsus linguæ* had occurred, the counsel would have corrected it at the time. But, if we concede that the court by inadvertence spoke as the stenographer's notes show, the mistake was too palpable and patent to mislead the jury or injure the plaintiff. The plaintiff's points had been presented and read to the court by counsel; and, the defendants having no points, the jury could not be misled by the court's calling them defendants' points.

PER CURIAM:

We have carefully considered all the specifications of error, and find nothing in any of them which will justify a reversal of this judgment. The points submitted were correctly affirmed, and the case was submitted in a correct charge under the evidence.

Judgment affirmed.